T.C. Memo. 2019-150

UNITED STATES TAX COURT

BEVERLY CLARK COLLECTION, LLC,
NELSON CLARK, TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27538-08.                    Filed November 14, 2019.

Steven Ray Mather, for petitioner.

John W. Stevens, for respondent.

MEMORANDUM OPINION

PUGH, Judge:  This case is before the Court on petitioner's Motion for
Summary Judgment.  In a notice of final partnership administrative adjustment
(FPAA) dated August 25, 2008, respondent determined that certain transactions in
1999 and 2000 were shams and should not be respected.  The specific issue for

[*2] decision is whether the period for assessment for 2000 was extended to six years under sections 6501(e)(1)(A) and 6229(c)(2).[1]

Background

The following facts are from the parties' pleadings and other materials in the record.

From 1987 to 2000 Nelson and Beverly Clark owned a wedding accessories business, the Beverly Clark Collection, which they operated as a sole proprietorship. On March 12, 1999, the Clarks transferred all of the assets and liabilities of the business to a newly created California limited liability company, Beverly Clark Collection, LLC (BCC). In exchange they received 100% of BCC's equity, with the Clarks each receiving 50% interests.

BCC's 1999 Form 1065, U.S. Return of Partnership Income, and the Clarks' 1999 Form 1040, U.S. Individual Income Tax Return, reported what they claimed to be a sale on December 31, 1999, of an 80.01% interest in BCC to Fausset Trust in exchange for a $10,401,300 Treasury note. Before that sale the Clarks had contributed Treasury notes and a small amount of cash to BCC. BCC then sold

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect at all relevant times. Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] the Treasury notes, recognizing a small loss. Respondent characterized the Clarks' acquisition of the notes through a short sale, their contribution to BCC, and BCC's disposition for a small loss as a "Son-of-BOSS" transaction that artificially inflated the Clarks' outside basis in BCC.[2]

On their 1999 Form 1040 the Clarks reported a short-term capital loss of $26,813 and a long-term capital loss of $3,703 on the sale of the BCC interest to Fausset Trust. BCC's 1999 Form 1065 reported capital contributions of $13,257,425 for the year. The 1999 Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., for Mr. Clark, Mrs. Clark, and Fausset Trust showed end-of-year ownership interests of 9.99%, 10%, and 80.01%, respectively.

BCC's Form 1065 and the Clarks' Form 1040 for 2000 reported what they claimed to be the tax consequences to BCC and its partners, the Clarks and Fausset Trust, of the March 2000 liquidation of BCC and sale of its assets to Maplewood LF Investors, LLC. The Clarks' 2000 Form 1040 reported $2,083,976 of gross proceeds and $1,406,395 of gain from the postliquidation sale of BCC's assets and goodwill. The Clarks also reported gross income of $811,512 for 2000. BCC's 2000 Form 1065 reported a $10,527,061 distribution of property and the

---

[2] We first described these types of transactions in Kligfeld Holdings v. Commissioner, 128 T.C. 192 (2007).

**[*4]** Clarks' 2000 Schedules K-1 reported flowthrough losses of $7,284,835 and $7,284,837, respectively. The Schedules K-1 also reported guaranteed payments from BCC to the Clarks totaling $150,000; the Clarks did not report this amount on their 2000 Form 1040, however.

Respondent issued an FPAA to petitioner on August 25, 2008, challenging the reported tax consequences described above. The parties agree that the FPAA was issued more than three but less than six years after the close of the relevant tax years (plus extensions of time for assessment).[3]

Petitioner filed a Motion for Summary Judgment that the applicable limitations period was three years, not six, and therefore the assessment of any tax stemming from the adjustments set forth in the FPAA is time barred. Respondent objected that the applicable period is six years because there was substantial omitted income within the meaning of section 6501(e)(1)(A). He offered two theories in support of this argument. First, he argued that substantial omitted income arose from the Clarks' overstated bases in their interests in BCC. Second, he argued that the Clarks' 1999 sale of 80.01% of their interest in BCC to Fausset

---

[3] The parties agree that respondent received from the Clarks a Form 872-I, Consent to Extend the Time to Assess Tax as Well as Tax Attributable to Items of a Partnership, as to the 2000 tax year before the expiration of the six-year period and that the FPAA was issued within that extended period. For simplicity we will disregard the extension and refer to the six-year period.

**[\*5]** Trust was a sham and should be disregarded, and, therefore, the Clarks were required to report the entire $12,990,000 in sale proceeds that respondent determined arose from the 2000 postliquidation sale of BCC's assets. Respondent contends that the omission of 80.01% of the sale proceeds resulted in a substantial omission of income and triggered the six-year limitations period under section 6501(e) as to the Clarks' return and, therefore, as to BCC's return under section 6229(c)(2), making the FPAA timely. See Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 542 (2000).

We entered an order and decision in this case granting summary judgment to petitioner, ruling that the period of limitations for assessment was three years and therefore had expired. We based our decision on the effect of our Opinion in Bakersfield Energy Partners, LP v. Commissioner, 128 T.C. 207 (2007), aff'd, 568 F.3d 767 (9th Cir. 2009), and did not address respondent's sham transaction argument. We specifically noted that Bakersfield "held that an overstatement of basis is not an omission of gross income triggering application of the 6-year period of limitations" at issue there. Beverly Clark Collection, LLC v. Commissioner, T.C. Dkt. No. 27538-08 (Nov. 10, 2010).

Respondent appealed our decision to the U.S. Court of Appeals for the Ninth Circuit. He abandoned his overstatement of basis argument after the U.S.

**[\*6]** Supreme Court decided <u>United States v. Home Concrete & Supply, LLC</u>, 566 U.S. 478 (2012).  In an unpublished opinion the Court of Appeals vacated our order and decision so that we could consider respondent's remaining argument that the limitations period remains open because the 1999 sale was a sham. <u>Beverly Clark Collection, LLC. v. Commissioner</u>, 571 F. App'x 601 (9th Cir. 2014).

Discussion

Rule 121(b) provides in part that after a motion for summary judgment and opposing response are filed "[a] decision shall thereafter be rendered if the pleadings * * * and any other acceptable materials, together with the affidavits or declarations, if any, show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law."  The moving party bears the burden of showing that there is no genuine issue of fact, and factual inferences will be drawn in the light most favorable to the nonmoving party.  <u>Dahlstrom v Commissioner</u>, 85 T.C. 812, 821 (1985).

Ordinarily, the limitations period on assessment of tax is three years after the return was filed.  Sec. 6501(a).  The period is extended to six years "[i]f the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return".  <u>Id.</u>

**[*7]** subsec. (e)(1)(A).  In determining the amount omitted from gross income, any amounts "disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item" are not taken into account.  Id. cl. (ii).[4]

With respect to a partnership subject to the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA),[5] Pub. L. No. 97-248, sec. 402(a), 96 Stat. at 648, section 6229 provides that "the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after" (1) the date on which the partnership return for that taxable year was filed or (2) the last day for filing the return for that year, whichever was later.  Sec. 6229(a) (repealed 2018).  The period can be extended further by agreement "before the expiration of such period." Id. subsec. (b)(1); see also sec. 6501(c)(4)(A).

---

[4] In the 2010 amendment to sec. 6501 enacted by the Hiring Incentives to Restore Employment Act, Pub. L. No. 111-147, sec. 513(a)(1), 124 Stat. at 111 (2010), this provision was moved to sec. 6501(e)(1)(B)(ii).

[5] Before its repeal, see Bipartisan Budget Act of 2015, Pub. L. No. 114-74, sec. 1101(a), 129 Stat. at 625, TEFRA governed the tax treatment and audit procedures for certain partnerships, see Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, secs. 401-407, 96 Stat. at 648-671.

**[*8]**  Section 6229 thus provides an alternative minimum period of limitations to the one set out in section 6501 and gives the Commissioner a minimum of three years to challenge items on a TEFRA partnership return.  Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. at 542.  Section 6229(c)(2) provides that the limitations period is extended to six years "[i]f any partnership omits from gross income an amount properly includible therein", and that amount is described in section 6501(e)(1)(A) as "in excess of 25 percent of the amount of gross income stated in the return".

Partnership-level adjustments may result in a substantial omission at the partner level for purposes of section 6501(e).  Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. at 551; see also CNT Inv'rs, LLC v. Commissioner, 144 T.C. 161, 189-191 (2015).  And as we explained in Rhone-Poulenc Surfactants & Specialties, partnerships are not taxable entities; any income tax attributable to partnership items must be assessed at the partner level. So if the limitations period was open as to the Clarks when respondent issued the FPAA, the FPAA was not meaningless, and this case may proceed; if it was closed, the FPAA is untimely and we must enter decision for petitioner.  See CNT Inv'rs, LLC v. Commissioner, 144 T.C. at 213; see also Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. at 534-535.

**[*9]** Respondent's argument is that the so-called omission on the 2000 returns arose not just from overstated basis generated by the "Son-of-BOSS" transaction but also because the 1999 sale by the Clarks of 80.01% of BCC to Fausset Trust was a sham.[6] If so, then the Clarks omitted 80.01% of gain on the postliquidation 2000 sale from their 2000 Form 1040 because they received greater gross proceeds than were reported as allocable to them on BCC's 2000 Form 1065 or their 2000 Form 1040.

Because the question of whether the 1999 sale was a sham is a genuine factual dispute material to respondent's argument against summary judgment, we will assume that it was so for purposes of deciding petitioner's motion. We agree that, assuming the 1999 sale was a sham, the Clarks should have reported gain on the full amount of the proceeds of the postliquidation asset sale--$12,990,000. Respondent contends that this was an omission in excess of 25% of the gross income the Clarks reported on their 2000 Form 1040 and BCC reported as attributable to the Clarks on its 2000 Form 1065. Therefore, argues respondent, the six-year period of limitations applies, and the FPAA issued to petitioner is

_____

[6] Respondent does not argue that there was an omission of gross income on the 1999 returns. And as the only adjustment to BCC's 1999 Form 1065 in the FPAA was a reduction in the amount of capital contributed to BCC by the Clarks, we likewise conclude that there was no omission.

**[*10]** timely.  So the first question we must answer is whether the Clarks' failure to report the other 80.01% of the gain is an omission for purposes of the six-year limitations period.

In considering the application of a prior version of section 6501(e)(1)(A), the U.S. Supreme Court explained that "the Commissioner is at a special disadvantage" where a taxpayer fails to report an item of tax and "the return on its face provides no clue to the existence of the omitted item."  Colony, Inc. v. Commissioner, 357 U.S. 28, 36 (1958).  The Court went on to explain:  "On the other hand, when * * * the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage.  And this would seem to be so whether the error be one affecting 'gross income' or one, such as overstated deductions, affecting other parts of the return."  Id.

We recently addressed this question in another "Son-of-BOSS" case, CNT Inv'rs, LLC.  There, the taxpayer argued that under United States v. Home Concrete & Supply, LLC, 566 U.S. 478 (2012), "the allegedly omitted item--gain recognized on * * * [a partnership's] distribution of appreciated property to its shareholders--d[id] not constitute an omission within the meaning of section

**[\*11]** 6501(e)(1)(A) because it derive[d] entirely from an overstatement of outside basis." CNT Inv'rs, LLC v. Commissioner, 144 T.C. at 208.

In Home Concrete & Supply, LLC, 566 U.S. at 483, the Supreme Court concluded that its interpretation in Colony, Inc., applied with equal force to the current version. In both cases the Supreme Court considered and rejected respondent's argument here that the phrase "omits * * * an amount" in section 6501(e)(1)(A) should be read to include an understatement of an amount, concluding that such a reading would give too much weight to "amount" and too little to "omits". Home Concrete & Supply, LLC, 566 U.S. at 485-486; Colony, Inc. v. Commissioner, 357 U.S. at 32-33. In Colony, Inc., the Court rejected the Commissioner's argument that the phrase "omits from gross income an amount properly includible therein" should be read to include an understatement of income arising from an overstatement of costs. And in Home Concrete & Supply, LLC, 566 U.S. at 490, the Court expressly rejected the Commissioner's argument that "omits" could be construed to include an understatement of income arising from an overstatement of basis.

Thus, as we explained in CNT Inv'rs, LLC v. Commissioner, 144 T.C. at 208, under both Colony, Inc. and Home Concrete & Supply "[t]o 'omit' an amount properly includible in gross income is to leave something out entirely." And we

[*12] then analyzed whether the taxpayers omitted any item of income entirely, accepting for purposes of our analysis their basis overstatements as accurate. Id. at 209-210.

The question before us is a little different, as respondent's theory here is that a sham sale, not an overstatement of basis, gave rise to the omission. So we must decide whether that distinction makes any difference. We conclude that it does not; we are bound to the Supreme Court's analysis. That is, even if we assume that the basis was not wrong but the sale of BCC to Fausset Trust was a sham, the Clarks did not omit an item of gain entirely; they just reported an incorrect amount of gain. See id. at 208 (concluding that when a taxpayer overstates basis and thereby understates gain, "the taxpayer has reported, not omitted, the item of gain, albeit in an incorrect amount"). We therefore reject respondent's assertion that the test in section 6501(e)(1)(A) is computational. And we find no support for respondent's claim that Colony, Inc. should not apply here because that case involved gross proceeds of a business unlike here. See Carpenter Family Invs., LLC v. Commissioner, 136 T.C. 373, 386 (2011).

The parties agree that the Clarks reported gain attributable to the total 19.99% interest in BCC that they claimed to retain after the sham transaction. One could argue that the Clarks omitted the entire amount of gain allocated to Fausset

**[\*13]** Trust, but the result of respondent's sham-sale theory is that the Clarks should have reported 100% of the gain on the postsale liquidation rather than 19.99%. And because they reported 19.99% of the gain rather than 100%, they did not "omit" an item of gain entirely but rather reported an incorrect amount, so the six-year period of limitations does not apply.[7] While the clues on the returns filed here seem "sufficient to intrigue [only] a Sherlock Holmes",[8] they must suffice under the statutory framework for the reasons explained by the Supreme Court.[9]

---

[7] The Clarks' failure to report any of the guaranteed payments reported on the 2000 Schedules K-1 does not constitute an omission for purposes of sec. 6501(e)(1)(A) for two reasons. First, it does not amount to 25% of the gross income the Clarks reported on their 2000 Form 1040. Second, it was reported on the Schedules K-1 that the Clarks received, and we have held that information disclosed on partnership returns may constitute adequate disclosure when the taxpayer's return makes reference to them, as was done here. See, e.g., Davenport v. Commissioner, 48 T.C. 921 (1967); Walker v. Commissioner, 46 T.C. 630 (1966); Roschuni v. Commissioner, 44 T.C. 80 (1965), supplementing T.C. Memo. 1964-321.

[8] In Quick Tr. v. Commissioner, 54 T.C. 1336, 1347 (1970), aff'd per curiam, 444 F.2d 90 (8th Cir. 1971), we stated: "The touchstone in cases of this type is whether respondent has been furnished with a 'clue' to the existence of the error. * * * Concededly, this does not mean simply a 'clue' which would be sufficient to intrigue a Sherlock Holmes. But neither does it mean a detailed revelation of each and every underlying fact."

[9] We therefore do not reach the question whether, in determining whether disclosure was adequate on a return for one tax year, we consider what was

(continued...)

**[\*14]** We therefore will grant petitioner's Motion for Summary Judgment that the FPAA was untimely.[10]

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.

---

[9](...continued)
reported on returns for a different tax year.

[10] As respondent received the Form 872-I from petitioner after the three-year limitation period expired, the form was ineffective and the limitations period was not extended. <u>See</u> secs. 6229(b)(1), 6501(c)(4)(A).